**FILED**

Case:11-05013-JSD   Doc#:413   Filed:11/20/12   Entered:11/  Lucinda B. Rauback, Acting Clerk  0
United States Bankruptcy Court
Brunswick, Georgia
*By arowe at 2:43 pm, Nov 20, 2012*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Waycross Division

| | |
|---|---|
| IN RE: | Chapter 7 Case<br>Number 09-51272 |
| DOUGLAS ASPHALT COMPANY | |
| Debtor | |

| | |
|---|---|
| MARY JANE CARDWELL, TRUSTEE<br>FOR THE BANKRUPTCY ESTATE OF<br>DOUGLAS ASPHALT COMPANY | Adversary Proceeding<br>Number 11-05013 |
| Plaintiff | |
| v. | |
| BANKRUPTCY ESTATE OF JOEL<br>SPIVEY, JOEL SPIVEY, KYLE<br>SPIVEY, FLORIENCE SPIVEY,<br>RONNIE SPIVEY, COFFEE COUNTY<br>MACHINE & IRON WORKS, INC.,<br>KENNETH E. FUTCH, JR., KENNETH<br>E. FUTCH, P.C., BRENT J.<br>SAVAGE, SAVAGE, TURNER, PINSON<br>& KARSMAN, FIDELITY AND<br>DEPOSIT COMPANY OF MARYLAND<br>AND ZURICH AMERICAN<br>INSURANCE COMPANY, ARCH<br>INSURANCE COMPANY, GEORGIA<br>DEPARTMENT OF REVENUE, UNITED<br>STATES TREASURY-INTERNAL<br>REVENUE SERVICE, MARY JEAN<br>SPIVEY, MARATHON PETROLEUM<br>COMPANY, LLC N/K/A MARATHON<br>PETROLEUM COMPANY, LP, DUVAL<br>COUNTY/ CITY OF JACKSONVILLE,<br>FLORIDA, GEORGIA DEPARTMENT<br>OF NATURAL RESOURCES/<br>ENVIRONMENTAL PROTECTION<br>DIVISION, FLORIDA DEPARTMENT | |

OF REVENUE, TOOMBS COUNTY TAX )
COMMISSIONER, COFFEE COUNTY )
TAX COMMISSIONER, WARE COUNTY )
TAX COMMISSIONER, AFVA )
ENTERPRISE, INC., ALITHICON )
LUBRICANTS CO., INC., ASC )
CONTRUCTION EQUIPMENT USA, )
INC., ATLANTIC DRILLING )
SUPPLY, INC., BATEY & SANDERS,)
INC., CARMEUSE LIME AND SLATE,)
INC., CELLULAR DEPOT DOUGLAS, )
CDW CORPORATION, DAYS INN, )
FIBERAND, INC., FIVE N'S, )
INC., FLEETCOR TECHNOLOGIES )
OPERATING CO., LLC, GAYATRI )
CORPORATION, GEORGIA SURVEYORS)
EXCHANGE COMPANY, CAROLYN )
HAMMOCK, HANSON PIPE & )
PRECAST, INC., JOHN CARLO, )
INC., LAFARGE NORTH AMERICAN, )
INC., LUMBERMENS MUTUAL )
CASUALTY COMPANY, MCCORD TIE )
& TIMBER, INC., SUBROGATING )
LEGAL JUDGMENTS, LLC ASSIGNEE )
OF OSAN PETROLEUM CO., INC., )
P&C AUTO PARTS, INC., PIONEER )
FINANCIAL, LLC, SHREE SATYA )
SAI, LLC D/B/A QUALITY INN AT )
FORT STEWART, REGENCY INN, )
S.A.F.E. INVESTMENTS, LLC., )
SAVANNAH TIRE & RUBBER CO., )
SCOTT ICE SERVICE, LLC, )
SOUTHERN DAVIS BUSINESS, )
STRICKLAND OIL COMPANY, INC., )
T&M TRUCK CENTER, INC., )
SUWANEE AMERICAN CEMENT, LLC, )
TARMAC AMERICA, LLC )
)
     Defendants )
)
KENNETH E. FUTCH AND SAVAGE & )
TURNER, P.C. )
)
     Movants )
)

2

AO 72A

```
v.                            )
                              )
MARY JANE CARDWELL, TRUSTEE   )
FOR THE ESTATE OF DOUGLAS     )
ASPHALT COMPANY, ZURICH       )
INSURANCE COMPANY OF AMERICA, )
FIDELITY & DEPOSIT COMPANY    )
OF MARYLAND, ARCH INSURANCE   )
COMPANY, AND LUMBERMENS       )
MUTUTAL CASUALTY COMPANY      )
                              )
                              )
        Respondents           )
```

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before me on the amended motion for summary judgment by Defendants Kenneth E. Futch and Savage & Turner, P.C.[1] ("Attorneys")[2]. The first issue raised is whether

---

[1] References to the docket of the underlying chapter 7 case number 09-51272 appear in the following format: "Case Dkt. No. __." References to the docket of this adversary proceeding, case number 11-05013, appear in the following format: "A.P. Dkt. No. __." References to the docket of prior adversary proceeding, case number 10-05003 appear in the following format: "P.A.P. Dkt. No. __." References to the involuntary chapter 7 case number 10-50340, appear in the following format: "Spivey Dkt. No. __."

[2] The amended motion for summary judgment was brought Kenneth E. Futch and Savage and Turner, P.C.. (A.P. Dkt. No. 371.) However, it is unclear to the Court whether Savage & Turner, P.C. moves only for itself or moves also for Brent J. Savage individually; similarly, it is unclear whether Kenneth E. Futch moves only for himself individually, or for the law firm of Kennth E. Futch, P.C. as well.

Notably, Savage & Turner, P.C. has been known by several names throughout the bankruptcy case and adversary proceedings. (Case Dkt. No. 348; P.A.P. Dkt. No. 78.) Brent J. Savage has also been named individually in the case. (Case Dkt. No. 348.) In his answer to this adversary proceeding, Mr. Savage answers as "Brent J. Savage, and the law firm of Savage and Turner, P.C." (A.P. Dkt. No. 23.) Similarly, Kenneth E. Futch, Kenneth E. Futch, P.C., and The Futch Law

AO 72A

Attorneys have an attorney's charging lien ("Charging Lien") against the proceeds of a settlement reached post-petition when Attorneys served as both pre-petition counsel to the Debtor and post-petition special counsel to the debtor's bankruptcy estate. Related to that issue is the question of how a pre-petition settlement offer impacts the amount and priority of fees that Attorneys receive. Based upon my determination that Attorneys' work as special counsel to the estate (as opposed to Attorneys' representation of the Debtor pre-petition) produced the post-petition settlement, I find that Attorneys have no Charging Lien against at least part of the post-petition settlement proceeds. Furthermore, I find that the pre-petition settlement offer entitles Attorneys to a pre-petition unsecured claim for a reasonable amount of fees. Since resolution requires significant factual determinations, Attorneys' motion for summary judgment is denied.

---

Firm are used interchangeably throughout the proceedings (Case Dkt. No. 349; P.A.P. Dkt. No. 1.) In his answer to this adversary proceeding, Mr. Futch answers as "Kenneth E. Futch, on his own behalf and on behalf of Kenneth E. Futch, P.C." (A.P. Dkt. No. 21.) In his Amended Fee Application in the underlying bankruptcy, he applies as Kenneth E. Futch, P.C.. (Case Dkt. No. 559.) Furthermore, in the substance of this motion, he refers to the Contingency Fee Agreement of The Futch Law Firm and the Second Settlement, where he signs as Kenneth E. Futch, Jr. (A.P. Dkt No. 351 Exs. 2, 4.)

Because of the confusion as to which parties move for summary judgment, the term "Attorneys" refers to Kenneth E. Futch, Kenneth E. Futch, P.C., Brent J. Savage, and Savage & Turner, P.C..

## BACKGROUND

Douglas Asphalt Company, the Debtor, is a paving company incorporated in Georgia and its shareholders are Joel Spivey, Kyle Spivey and Florience Spivey. Before the Chapter 7 involuntary bankruptcy action was filed against the Debtor on December 2, 2009 (Case Dkt. No. 1), Debtor was a party to litigation that produced two separate settlements: one settlement produced prior to the filing of bankruptcy and a second settlement produced after the bankruptcy proceedings had begun (P.A.P. Dkt. No. 82 Ex. B; A.P. Dkt. No. 351 Ex. 2). On December 5, 2011, Mary Jane Cardwell, the Trustee for the current chapter 7 estate ("Trustee"), filed this adversary proceeding to determine which parties have valid pre-petition liens and/or claims against the combined settlement proceeds,[3] and to determine

---

[3] In a prior adversary, I awarded Attorneys liens against the pre-petition settlement in the amount of $966,945.97, which included $750,000 in fees and $216,945.97 in expenses. (Order Den. Pls.' Mot. for Summ. J. and Granting Defs.', Fidelity and Deposit Company of Maryland, Zurich American Insurance Company, and Arch Insurance Company, Partial Summ. J., Feb. 4, 2011, P.A.P. Dkt. No. 132.) Attorneys have already been paid $1 million of the total $2 million pre-petition settlement funds. (Consent Order for Partial Payment, June 29, 2010, P.A.P. Dkt. No. 77; Consent Order for Disbursement of Funds, June 29, 2010, P.A.P. Dkt. No. 78.) There remains in the registry $1 million from the pre-petition settlement and $3 million from the post-petition settlement, a total of $4 million. (Case Dkt. No. 44; Order on Mot. for Payment of Settlement Funds into the Registry of the Ct. Pending Further Order of the United States Bankruptcy Ct. for Their Distribution, July 25, 2012, Case Dkt. No. 550.)

5

the extent and priority of those liens and other interests.[4] (A.P. Dkt. No. 1 ¶ 1, 19.)

Savage & Turner, P.C. and Kenneth E. Futch, P.C. are law firms that represented the Debtor and certain principals of the Debtor both in the prior litigation and in several other legal matters prior to the bankruptcy. After the bankruptcy was filed, Brent J. Savage and Kenneth E. Futch, along with their respective firms, were appointed as special counsel for the Debtor-in-possession and then for the Debtor's estate. (Case Dkt. Nos. 106, 348, 349.) Zurich Insurance Company of America, Fidelity and Deposit Company of Maryland, Arch Insurance Company, and Lumbermens Mutual Casualty Company ("Insurance Companies") are surety creditors of the Debtor. (Case No. 09-51272, Cl. # 101, 124, 125; A.P. Dkt. No. 358.)

On July 11, 2012, Attorneys filed a motion for summary judgment ("Original Motion") in this adversary proceeding seeking a determination that they hold a Charging Lien against the proceeds of the post-petition settlement in the amount of $1,050,000. (A.P. Dkt. No. 351.) After the Trustee and the Insurance Companies responded (A.P. Dkt. Nos. 357, 358),

---

[4] While it is not entirely clear from the pleadings whether this adversary addresses solely pre-petition liens, since the parties seem to agree that it does, I will treat the adversary as such. (A.P. Dkt. No. 1; A.P. Dkt. No. 358; A.P. Dkt. No. 371.)

6

Attorneys filed this amended motion for summary judgment ("Amended Motion") on September 10, 2012, and argued that the value of their lien should be increased to $2.04 million. (A.P. Dkt. No. 371.) The Insurance Companies and the Trustee (collectively "Respondents") filed responses on October 15, 2012, and September 25, 2012, respectively. (A.P. Dkt. No. 397; A.P. Dkt. No. 383.) Attorneys then replied on October 26, 2012 (A.P. Dkt. No. 400), Insurance Companies replied on November 8, 2012 (A.P. Dkt. No. 407), and Attorneys replied again on November 14, 2012 (A.P. Dkt. No. 409).

## UNDISPUTED FACTS

The parties have agreed that the following facts are undisputed.[5] Prior to the institution of Debtor's involuntary bankruptcy, Debtor, Joel Spivey, and Kyle Spivey sued Applied Technical Services ("ATS") and several other defendants in United States District Court[6] ("ATS Litigation.") (A.P. Dkt. No. 1 ¶ 4; A.P. Dkt. No. 371; A.P. Dkt. No. 397.) Pursuant to a contingency fee agreement ("Fee Agreement"), Attorneys represented Debtor and

---

[5] While only the Trustee filed an actual statement of undisputed material facts, from the parties' various factual statements in this adversary, the underlying bankruptcy, and a prior adversary, these facts are considered undisputed.

[6] Douglas Asphalt Co. v. Applied Technical Servs., No. 2:06-CV-229-AAA (S.D. Ga. Oct. 10, 2006). (A.P. Dkt. No. 351 Ex. 2; A.P. Dkt. No. 1 ¶ 4.)

AO 72A

other plaintiffs in the suit. (P.A.P. Dkt. No. 82-2 ¶ 11; P.A.P. Dkt. No. 105-4 ¶ 11; Case Dkt. No. 117; A.P. Dkt. No. 383; A.P. Dkt. No. 397 ¶ 1.) Before a verdict was rendered, the parties settled for $2 million plus an assignment to plaintiffs of various other causes of action owned by ATS ("First Settlement.") (P.A.P. Dkt. No. 82-5; P.A.P. Dkt. No. 82-2 ¶ 8; A.P. Dkt. No. 1 ¶ 6; A.P. No. 371; A.P. Dkt. No. 397 ¶ 2.) Eventually, on October 1, 2009, the jury returned a verdict in favor of plaintiffs for $150 million. (A.P. Dkt. No. 351 Ex. 1; A.P. No. 1 ¶ 6; A.P. Dkt. No. 397 ¶ 2.)

While that verdict was on appeal ("ATS Appeal") to the United States Court of Appeals for the 11th Circuit ("11th Circuit"), on December 2, 2009, an involuntary bankruptcy proceeding was filed against the Debtor. (Case Dkt. No. 1; A.P. Dkt. No. 1 ¶ 6; A.P. Dkt. No. 371; A.P. Dkt. No. 397 ¶ 4.) After the case was voluntarily converted to a chapter 11,[7] I appointed Attorneys as special counsel to the Debtor-in-possession on February 5, 2010 (Order Appointing Special Counsel, Feb. 8, 2010,

---

[7] The case was originally instituted as a chapter 7 involuntary bankruptcy on December 2, 2009. (Case Dkt. No. 1.) However, an order for relief was never entered in the chapter 7. Instead, on December 28, 2009, the Debtor responded to the involuntary bankruptcy by moving to have the case converted to a chapter 11. (Case Dkt. No. 12.) I use the term "convert" to refer to the change from the involuntary chapter 7 to the chapter 11 because that is the term the parties use. The case was then "re-converted" to a chapter 7 on April 12, 2010. (Case Dkt. No. 220.)

Case Dkt. No. 106), and, after the case was re-converted to a chapter 7, on motion of the Trustee,[8] I appointed Attorneys as special counsel to the Debtor's estate on June 17, 2010[9] (Order Appointing Special Counsel, June 18, 2010, Case Dkt. No. 348; Order Appointing Special Counsel, June 18, 2010, Case Dkt. No. 349).

Meanwhile, sometime before the 11th Circuit reached a decision on the ATS Appeal, Attorneys and opposing counsel in the ATS Litigation began negotiating another settlement. (A.P. Dkt. No. 371; A.P. Dkt. No. 383; A.P. Dkt. No. 397.) Those negotiations resulted in a post-petition agreement ("Second Settlement"), which was structured to produce a minimum of $3 million and a maximum of $12 million, and which partially set out the varying amounts Debtor would receive depending on the outcome of the ATS Appeal. (A.P. Dkt. No. 351 Ex. 2.) The Trustee moved to approve the final version of that agreement on September 29, 2011 (Case Dkt. No. 451), and I entered an order approving the

---

[8] Mary Jane Cardwell was named chapter 7 Trustee on April 12, 2010. (Case Dkt. No. 223.)

[9] Attorneys were originally appointed under the Chapter 11 case to address ongoing litigation outside of the bankruptcy court. (Expedited Appl. to Retain Counsel, Feb. 5, 2010, Case Dkt No. 98; Case Dkt. No. 106.) After the case was re-converted to a chapter 7, the Trustee moved to continue Attorneys' representation of the estate. (Mot. To Retain Counsel for a Special Purpose, May 24, 2010, Case Dkt. No. 296.; Case Dkt. No. 348; Case Dkt. No. 349.) Thus, there were two separate appointments.

AO 72A

Second Settlement on December 1, 2011 (Order on Mot. to Compromise Controversy, Dec. 2, 2011, Case Dkt. No. 461). The 11th Circuit eventually overturned the jury verdict in the ATS Litigation, and as a result, the Second Settlement produced $3 million. (A.P. Dkt. No. 1 ¶ 6, 19; A.P. Dkt. No. 371; A.P. Dkt. No. 397 ¶ 17.)

## THE PARTIES' ARGUMENTS

### I. Movants

Attorneys brought this Amended Motion seeking a determination that they have a valid Charging Lien against the Second Settlement proceeds and, if so, a determination of the value of that lien.[10] (A.P. Dkt. No. 371.) In claiming a Charging Lien, Attorneys first state that their representation of the Debtor in the ATS litigation, rather than their representation of the Debtor's estate as special counsel in the underlying bankruptcy, produced the Second Settlement. (A.P. Dkt. No. 371.)

---

[10] Notably, on August 29, 2012, Attorneys filed an Amended Fee Application in the underlying bankruptcy case for pre-petition and post-petition work done by the Attorneys, and advanced substantively identical arguments for pre-petition liens as those advanced in this Motion. (Case Dkt. No. 559.) In addition, on August 16, 2012, Attorneys filed a fee application in the involuntary bankruptcy case against Joel Spivey also claiming rights to the Second Settlement proceeds. (Spivey Dkt. No. 173). In a hearing on August 30, 2012, I stayed the fee applications until after determination of this motion for summary judgment. (Case Dkt. No. 560.)

With that premise in mind, they then turn to state law and argue that in Georgia, attorneys have charging liens on the judgments and settlements that their labors produce. (Id.) They contend that such liens arise when an attorney's employment begins, and are perfected either at that same time or when the first judgment in the litigation is rendered. (Id.)

Applying that theory to their case, Attorneys argue that their Charging Lien against the Second Settlement arose when they began representing the debtor in 2006 and was perfected either at that same time or when the jury awarded the $150 million dollar judgment. (Id.) They contend that because both the start of their employment in the ATS Litigation and the rendering of the $150 million dollar judgment happened before the filing of bankruptcy, their Charging Lien against the proceeds of the Second Settlement both arose and was perfected before the bankruptcy action began. (Id.) Thus, they claim a Charging Lien against the Second Settlement proceeds. (Id.; see also A.P. Dkt. No. 351.)

Next, Attorneys ask me to establish the amount of their Charging Lien. In their Original Motion, Attorneys argued that the value of their lien should be determined by the Fee Agreement's provision dealing with settlements. (A.P. Dkt. No. 351.) They concluded that since the Second Settlement produced $3

11

million, they were entitled to a lien of 35%, an amount totaling $1,050,000.[11]

The Trustee counters that the Fee Agreement was an executory contract rejected in the bankruptcy case. (A.P. Dkt. No. 357.) Since the Fee Agreement was rejected, she argues that Attorneys were not entitled to a lien based on one of its provisions, but instead were entitled to reasonable fees for their work as special counsel. (Id.)

In response, Attorneys filed the Amended Motion in which they argue that if the Trustee rejected the Fee Agreement, and, in doing so, terminated their contract, then instead of having the value of their lien calculated by the Fee Agreement's settlement provision, the value of their lien should be calculated according to the Fee Agreement's dismissal clause. (A.P. Dkt. No. 371; A.P. Dkt. No. 400.) Since the dismissal clause gives Attorneys rights to a percentage of any settlement proposed at the time of dismissal, Attorneys assert entitlement to a percentage of a $6 million dollar settlement offer that they claim was proposed at the time of their "dismissal" by contract rejection ("Settlement Offer"). (A.P. Dkt. No. 371.) Thus,

---

[11] The fee agreement provided for 37.5% of any settlement producing from $1 million to $3 million, and 35% of any settlement producing from $4 million to $6 million. Since the First Settlement produced the first $2 million, and since I already awarded Attorney's 37.5% of that money, Attorneys asserted a claim to 35% of the next $3 million. (A.P. Dkt. No. 351.)

AO 72A

insisting that $2.04 million reflects the proper percentage of the $6 million, Attorneys claim a Charging Lien in the amount of $2.04 million for their work in producing the Second Settlement.[12] (Id.)

## II. Respondents

Respondents dispute several assertions set forth in the Amended Motion. First, Respondents claim that Attorneys do not have a valid Charging Lien against the proceeds of the Second Settlement. (A.P. Dkt. No. 383; A.P. Dkt. No. 397.) Instead, they contend that Attorneys' post-petition work as special counsel for the estate produced the Second Settlement. (Id.) Additionally, they argue that since the Trustee's rejection of the Fee Agreement was a complete rejection of an executory contract, Attorneys cannot now claim a Charging Lien whose value is determined by one of the rejected contract's provisions. (Id.) Therefore, they argue that instead of being paid by a Charging

---

[12] In calculating the amount they are owed, Attorneys first add the amount produced by the First Settlement ($2 million) to the amount of the proposed settlement ($6 million). In doing so, they establish that the ATS Litigation produced a total of $8 million. Since under the agreement, they were entitled to fees of 37.5% from the first $3 million earned, and since they already received 37.5% from the First Settlement, they claim that they are entitled to 37.5% of the first $1 million produced in the Second Settlement, and amount of $375,000. They then claim 35% of the next $2 million, an amount of $700,000; 33.3% of the following $2 million, an amount of $666,000; and 30% of the last $1 million, an amount of $300,000. By adding those numbers together, they come up with $2.04 million.

13

Lien whose amount is calculated according to the Fee Agreement, Attorneys should be paid according to the orders appointing them as special counsel for the estate. (Id.)

In addition to their main contention that Attorneys lack a Charging Lien, Respondents dispute several other assertions in the Amended Motion. First, Respondents take issue with Attorneys' claim that only the ATS Litigation produced the Second Settlement. (Id.) In doing so, Respondents explain that since the Second Settlement contains provisions not only setting forth the consequences of the appeal verdict in the ATS Litigation but also providing for the dismissal of other cases as consideration for the settlement, it is unclear what portion of the Second Settlement proceeds are attributable to the ATS Litigation and what portion of the proceeds are attributable to the other cases. (Id.) They argue that nowhere in the Second Settlement does the language explain the value of the dismissals, and nowhere in the Amended Motion do Attorneys give any details about the other listed cases or the relationship of those cases to the ATS Litigation. (Id.) Therefore, Respondents contend that even if Attorneys are entitled to a Charging Lien against a portion of the Second Settlement proceeds in an amount determined by a percentage set forth in the Fee Agreement, Attorneys cannot calculate that percentage without first producing facts to show

14

what portion of the proceeds is attributable to their work as attorneys in the ATS litigation and what portion of the proceeds is attributable to their work in the other cases dismissed as part of the Second Settlement. (Id.)

Furthermore, while not conceding that the Fee Agreement is the proper instrument for calculating the amount of Attorneys' compensation, Respondents next argue that in the event that a provision in the Fee Agreement supplies the amount of the Charging Lien, Attorneys have not proven that the Fee Agreement's dismissal clause, as opposed to another clause, applies in this case. (Id.) In making this argument, Respondents point to three separate clauses in the Fee Agreement: One provides that in the event of a material breach, Attorneys are owed a reasonable value for the services they have performed up to the time of breach; the second provides that in the event of termination, Attorneys are also owed the reasonable value for their services; and the third provides that in the event of dismissal, Attorneys are owed the greater of $350 per hour or a percentage of any settlement offer existing when the dismissal occurs. (Id.) Claiming that Attorneys were never dismissed as counsel, Respondents argue that if the Fee Agreement supplies the amount of the Charging Lien, Attorneys should be paid according to either the breach or termination provisions instead of according to the dismissal

15

provision; thus, they should receive a reasonable amount of money for the services they provided. (Id.)

Finally, the Trustee disputes that the Settlement Offer of $6 million existed at the time of termination. (A.P. Dkt. No. 383.) The Trustee admits that Attorneys mentioned an offer to settle within policy limits (limits the Attorneys believed were $6 million) but states that she understood the $6 million to represent not just the claims of the Debtor amounting to $3 million but the claims of other individuals amounting to $1 million each. (Id.) She contends that under the terms of the Settlement Offer, the most the Debtor could realize was $3 million. (Id.; A.P. Dkt. No. 383-3 ¶ 8.) Furthermore, she asserts that she had no knowledge of any settlement offer prior to the bankruptcy filing. (A.P. Dkt. No. 383-3 ¶ 5.)

## CONCLUSIONS OF LAW

### I. Summary Judgment Standard

According to Rule 56 of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

16

matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact, and "any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party." Keiser v. Coliseum Props., Inc., 614 F.2d 406, 410 (11th Cir. 1980)(citing Alabama Farm Bureau Mutual Casualty Co. V. American Fidelity Life Ins. Co., 606 F.2d 602 (5th Cir. 1979), Southern Distributing Co. v. Southdown, Inc., 574 F.2d 824 (5th Cir. 1978)); see also Velten v. Regis B. Lippert, Intercat, Inc., 985 F.2d 1515, 1523 (11th Cir. 1993)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

A genuine issue exists where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993). Facts are material if they could affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

Having reviewed the motions and various responses, I find that in this case there are three disputed factual issues that relate directly to three issues of law. As a matter of law, the parties first dispute whether Attorneys have a Charging Lien

17

against the proceeds of the Second Settlement. Next, based on the first determination, the parties dispute how the amount of that lien should be calculated. Thirdly, assuming that Attorneys are entitled to a Charging Lien whose value should be determined by a dissolution provision in the Fee Agreement, the parties dispute which of the three clauses addressing end of employment supplies the proper measure of how Attorneys' fees should be calculated.

Furthermore, factually the parties dispute three things: (1) what is the estate's interest in the Second Settlement; (2) did the Settlement Offer exist at the time that the Fee Agreement ended; and (3) if the Settlement Offer did exist, what was the value of that offer. In order to determine whether any of these facts are material, I will examine them in the context of the legal questions presented.

## II. Attorneys do not have a Charging Lien Against the Proceeds of the Second Settlement.

The first legal question presented is whether Attorneys have a Charging Lien against the proceeds of the Second Settlement. Under Georgia law, a charging lien "is the equitable right of [an] attorney to recover his fees and costs due him for his services . . . [that] may be satisfied out of the judgment obtained by . . . [those] professional services." Howe & Assocs.,

P.C. v. Daniels, 274 Ga.App. 312, 314, 618 S.E.2d 42, 44 (2005)(citing Law Office of Tony Center v. Baker, 185 Ga.App. 809, 366 S.E.2d 167 (1988))(internal quotation marks omitted). The lien "arises upon the attorney's employment and is perfected by the ultimate recovery of the judgment for [the] client." Ramsey ·v. Sumner, 211 Ga.App. 202, 204, 438 S.E.2d 676, 678 (1993).

Furthermore, O.C.G.A. § 15-19-14(b) provides that such a lien is superior to all except tax liens against actions, judgments, and decrees for money in the amount of the attorney's fees. Therefore, when an attorney's work helps to produce a settlement or judgment for a client and the attorney perfects a lien in that work prior to the client's filing for bankruptcy, then instead of the estate paying the attorney for his pre-petition work as a general unsecured creditor under 11 U.S.C. § 507, the attorney's fees are paid from the judgment proceeds against which the lien attached before the estate pays the other creditors. See 11 U.S.C. § 506; see also In re Bracewell, 454 F.3d 1234, 1258 (11th Cir. 2006)(citing Colliers on Bankruptcy ¶ 506.02 (15th ed. Rev. 2006)("[T]he protections afforded secured creditors under the Code generally adhere first to the principle that the secured creditor is entitled to priority payment out of its collateral . . . .").

AO 72A

However, as I have previously held, a Charging Lien is limited to the attorney's fees and costs accruing from the case in which recovery is obtained. (Order Den. Pls.' Mot. for Summ. J. and Granting Defs.', Fidelity and Deposit Company of Maryland, Zurich American Insurance Company, and Arch Insurance Company, Partial Summ. J., Feb. 4, 2011, P.A.P. Dkt. No. 132.) Therefore, for a Charging Lien to exist, three things must be present: First, the attorney must have been hired as counsel; second, the attorney's work in that specific case must have produced the recovery; and third, there must have been some recovery that perfected the charging lien.

In this case, under the second prong, the parties dispute whether Attorneys' representation as pre-petition counsel for the Debtor or Attorneys' representation as post-petition special counsel for the Debtor's bankruptcy estate produced the Second Settlement. Additionally, since the recovery of the Second Settlement occurred post-petition, they dispute whether that recovery can relate back to a time pre-petition so as to perfect the Charging Lien pre-petition.

### A. Attorneys' Representation as Special Counsel to the Estate Produced the Second Settlement.

"A debtor's bankruptcy petition creates a legal fiction known as a 'bankruptcy estate' into which the debtor (or trustee

20

appointed to run the debtor's estate) places all of his assets." Bland v. Farmworker Creditors, 308 B.R. 109, 111-12 (S.D. Ga. 2003). "[A]ll the 'legal or equitable interests' [the debtor] had in his property [pre-petition] became property of the bankruptcy estate and are represented by the bankruptcy trustee." Turner v. Cook, 362 F.3d 1219, 1225-26 (9th Cir. 2004)(citing 11 U.S.C. § 541(a)(1)); see also In Re Hall, 415 B.R. 911, 921 (Bankr. M.D. Ga. 2009.) "The law is quite clear that if a debtor has filed a lawsuit, or has the right to file a lawsuit, after the debtor files a Chapter 7 case, that lawsuit, or whatever rights the debtor had in that lawsuit, belongs to the debtor's Chapter 7 bankruptcy estate." In re Tarrant, 349 B.R. 870, 873 (Bankr. N.D. Ala. 2006). "Generally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." Parker v. Wendy's Int'l., Inc., 365 F.3d 1268, 1272 (11th Cir. 2004)(citing Barger v. City of Cartersville, 348 F.3d 1289, 1292 (11th Cir. 2003)); see also Steger v. General Elec. Co., 318 F.3d 1066, 1080 (11th Cir. 2003)(citing In re Alvarez, 224 F.3d 1273, 1279-80 (11th Cir. 2000), cert. denied, 531 U.S. 1146, 121 S.Ct. 1083, 148 L.Ed.2d 959 (2001))("Because '[t]he bankruptcy trustee is the legal representative of the bankruptcy estate,' the debtor may not pursue a cause of action which is the property of the

AO 72A

bankruptcy estate unless the trustee abandons the claim or participates in the cause of action."); In re Tarrant, 349 B.R. at 874 (citing Bexley v. Dillon Cos., Inc., No. CIVA04CV01661MEH-MJW, 2006 WL 758474, at *3 (D. Colo. 2006)("After the filing of the bankruptcy, the trustee [becomes] the only person who [can] pursue the debtor's choses of action.")) The same rules apply to a debtor in possession in a chapter 11 case. 11 U.S.C. § 1107(a).

"Bankruptcy Code (title 11) section 327 allows the trustee to hire professionals to assist with the administration of the estate." In re Veterans Choice Mortg., Inc., 285 B.R. 70, 73 (Bankr. S.D. Ga. 2002). When the trustee employs special counsel under 11 U.S.C. § 327(e), that employment "must be in the best interests of the estate and not for the personal benefit of the debtor." In re Warner, 141 B.R. 762, 763 (M.D. Fl. 1992.); see also In re Chewning & Frey Security, Inc., 328 B.R. 899, 918 (Bankr. N.D. Ga. 2005) ("In bankruptcy, however, the purpose and function of counsel for the trustee is to benefit the estate.") When an attorney is employed as special counsel by the trustee, his duty is to serve the estate.

In this case, when the petition was filed, the right of the Debtor to pursue resolution of the ATS Litigation became property of the estate, and the trustee (or at one point, the Debtor-in-possession, acting with the same rights of a trustee) became the

AO 72A

only entity with authority to pursue the resolution of that action. Attorneys' representation of the Debtor in the ATS Litigation ended, and until Attorneys were appointed as special counsel (first to the Debtor-in-possession and then to the chapter 7 Trustee), their involvement with the case was over. In fact, in trying to seek damages pursuant to the dismissal clause of the Fee Agreement, Attorneys even argue that they were dismissed as counsel for the Debtor and that the attorney client relationship ended. (A.P. Dkt. No. 400.)

At the point when Attorneys' representation of the Debtor ended, there was no Second Settlement. Only after Attorneys were employed as special counsel to the estate did the Second Settlement come into being. Unlike the First Settlement, which was negotiated and finalized prior to the bankruptcy, the Second Settlement was not complete when the bankruptcy petition was filed. While Attorneys may have exerted efforts to produce the Second Settlement before their representation of the Debtor ended, in agreeing to become special counsel to the Trustee, Attorneys were no longer negotiating such settlement on behalf of the Debtor, but were now negotiating on behalf of the estate. Thus, I find that Attorneys' representation as special counsel to the estate produced the Second Settlement.

Having made such finding, it is unnecessary for me to reach the question of whether a charging lien in a post-petition settlement can be effectively perfected pre-petition. Still, since Attorneys insist that their claim to a Charging Lien against the Second Settlement turns on the court's decision in *In re Diamond Mfg. Co., Inc.*, 123 B.R. 125 (S.D. Ga. 1990.), I note the factual distinction between the two cases. In that case, an attorney who had not been appointed special counsel for the estate sought a Charging Lien against a post-petition settlement. *Id.* at 126. Distinctively, here, Attorneys *had* been appointed and were serving as special counsel when the Second Settlement was reached.

Even if, as Attorneys argue, *In re Diamond Mfg. Co., Inc.* stands for the proposition that the time of perfection of a Charging Lien relates back to either when the attorney is initially employed or when the first judgment in the case is entered, that lien can still only attach if the attorney's work in that specific action produces the recovery. In *In re Diamond Manufacturing Co., Inc.*, because the attorney only served as counsel to the Debtor and not as special counsel to the estate, there was only one representation from which the attorney's labors could have contributed to the settlement. *Id.* In contrast, here there are two representations capable of producing the

24

Second    Settlement—one    prior    to    bankruptcy    and    one    during bankruptcy.    Because    the    Second    Settlement    came    about    after Attorneys    stopped    representing    the    Debtor    and    started representing    the    estate,    the    post-petition    representation    as opposed to the pre-petition representation produced the Second Settlement.

Attorneys do not have a valid Charging Lien based upon their pre-petition representation of the Debtor against the proceeds of the Second Settlement that stem from the ATS Litigation.

### B. Attorneys may have a Charging Lien Against the Proceeds of the Second Settlement that are Unrelated to the Debtor.

While Attorneys do not have a Charging Lien against the portion    of    the    Second    Settlement    proceeds    attributable    to settling the ATS Litigation, they may have such liens against the portion    of    the    Second    Settlement    proceeds    attributable    to    the dismissals.

The    Second    Settlement    is    unclear    in    a    variety    of    ways. First, it fails to give any details about the dismissed actions listed as consideration for the agreement. That failure makes it impossible    for    me    to    determine    whether    the    entire    Second Settlement    or    just    a    portion    of    the    Second    Settlement    was negotiated by Attorneys in their capacity as special counsel. While it is clear that the ATS Litigation became property of the

estate when the pending involuntary bankruptcy case was converted to a voluntary chapter 11, it is unclear whether all or a portion of the listed dismissed actions were also pre-petition causes of action that belonged to the Debtor. If the other dismissals did not belong to the Debtor and thus did not become property of the bankruptcy estate, then it is conceivable that Attorneys negotiated the Second Settlement both as special counsel for the estate in reaching the ATS Litigation portion of the agreement, and also as counsel for other parties in reaching the dismissal portions. If Attorneys acted as counsel for other parties in negotiating the dismissals, then they may be entitled to a Charging Lien against the portions of the Second Settlement relating to those dismissals. However, from the scarce details about the dismissed cases in the Second Settlement, it is impossible for me to make that determination.[13]

In addition, as Respondents indicate in claiming that a genuine issue of material fact exists, the Second Settlement

---

[13] In their Reply to the Sureties' Response to the Amended Motion, Attorneys state that "some of the other cases listed in the high/low settlement agreement are assignments [Douglas Asphalt Company] received as part of the $2 million first settlement with ATS." (A.P. Dkt. No. 400.) They also state that "the cases of DAC et.al. v. ACIC filed in Glynn County State Court and in the U.S. District Court, Southern District of Georgia, Brunswick Division, were assigned to DAC in that first settlement." Still, that information does not address all of the cases listed as dismissed in the Second Settlement, and thus is insufficient for me to conclusively determine that the ATS Litigation produced the entire Second Settlement.

AO 72A

fails to specify the value of the ATS Litigation and the value of the other dismissals. Assuming Attorneys are entitled to a Charging Lien against the portions of the Second Settlement attributable to representation in the other dismissed cases, I cannot determine the amount of that lien without first determining the value of the ATS Litigation portion and the value of the dismissal portions. Consequently, not only is the value determination unclear from the Second Settlement, making it a genuine issue, but because such determination would likely change the amount and priority of the fees Attorneys are paid, it is a material fact in this case.

While Attorneys have failed to meet their burden on summary judgment, if Attorneys present evidence relating to the other dismissed cases and the value of the dismissals, they may be entitled to a Charging Lien against the dismissal portions of the Second Settlement.[14]

### III. Calculation of Attorneys' Fees from the Second Settlement

While the determination that Attorneys' work as special counsel led to all or part of the Second Settlement prevents

---

[14] Furthermore, as some of the parties listed in the Second Settlement are not listed in the Fee Agreement, if Attorneys seek to show a Charging Lien based on a percentage, they will have to show that the Fee Agreement or some other means supplies the proper percentage.

Attorneys from recovering a Charging Lien against the Second Settlement proceeds, such determination does not preclude Attorneys from recovering fees for their efforts in producing the Second Settlement altogether. Instead, Attorneys retain the right to fees for post-petition work as special counsel. Although this adversary addresses pre-petition claims, an analysis of how post-petition counsel may be compensated is appropriate.

"The starting point for any discussion concerning a professional's fee [in representing the estate] is the relevant statutory framework set out in 11 U.S.C. §§ 327-330." In re Citation Corp., 493 F.3d 1313, 1318 (11th Cir. 2007). While § 327(e) allows the trustee to employ attorneys for a special purpose, § 328 and § 330 provide two separate mechanisms to accomplish that employment. Id.

Under § 328, with the court's approval, the trustee may employ special counsel "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328. However, if the court does not pre-approve terms and conditions under § 328, then the mechanism for employment falls under § 330, which provides that special counsel should be paid "reasonable compensation for actual, necessary services rendered . . . based on the nature, the extent, and the value of

AO 72A

such services, and considering the time spent on such services, and the cost of comparable services." In re Citation Corp., 493 F.3d at 1318 (citing 11 U.S.C. § 330(a))(internal quotation marks omitted).

"To summarize, section 328 applies when the bankruptcy court approves a particular rate or means of payment and § 330 applies when the court does not do so." In re Airspect Air, Inc., 385 F.3d 915, 920 (6th Cir. 2004)(citing In re Texas Sec., Inc., 218 F.3d 443, 445 (5th Cir. 2000))(internal quotation marks omitted). Thus, if there is no approved contingency fee agreement, then the attorney's fees must be determined under § 330. See In re First Street Mart, Inc., 450 B.R. 581, 584 (Bankr. M.D.N.C. 2011).

In this case, when the bankruptcy attorney for the Debtor-in-possession applied to employ Attorneys as special counsel, his application indicated that Attorneys were willing to work "for a contingency fee of 35% and claims against designated parties and $300 per hour for defense work . . . ." (Case Dkt. No. 98.) Along with that application, the attorney submitted a proposed order that would approve employment on those terms. (Id.) However, I did not enter that proposed order, and instead entered an order that said "[t]he compensation of such special counsel will be later fixed and determined by the Court in such manner as the

AO 72A

Court may from time to time direct after notice to creditors." (Case Dkt. No. 106.)

Furthermore, after the case was converted from a chapter 11 to a chapter 7 and after the chapter 7 Trustee moved to employ Attorneys as special counsel, although her motion did not request any specific fees for Attorneys, it did state that she sought a continuation of the prior chapter 11 employment order. (Case Dkt. No. 296 ¶ 4.) When I entered the orders employing Attorneys as special counsel in the chapter 7, I used the exact language concerning compensation of Attorneys from the chapter 11 order. (Case Dkt. No. 348; Case Dkt. No. 349.)

Considering those facts, Attorneys are not automatically entitled to 35% of the Second Settlement as fees for their work as special counsel. While the original application requested a 35% contingency fee, I neither approved that request nor did I approve the Fee Agreement as the means of calculating Attorneys' special counsel fees. Section 328 does not control.

Instead, my order stating that Attorneys' compensation would be "later fixed and determined by the Court" follows employment under § 330, where a court reviews fees after the work has been completed. See In re Citation Corp., 493 F.3d at 1318-19. Since I did not pre-determine any method of payment, Attorneys' fees will be determined under § 330, and as such, will be given

30

administrative priority under 11 U.S.C. § 503(b)(2) and 11 U.S.C. § 507.

### IV. Treatment of the Settlement Offer

Attorneys argued in their Amended Motion that the value of their Charging Lien should be based on the dismissal provision in their Fee Agreement, which entitles them to a percentage of any settlement offers in existence at the time they are dismissed as counsel. However, having determined that Attorneys lack a Charging Lien against the bankruptcy estate's proceeds of the Second Settlement, I now must determine how Attorneys should be compensated for their work in procuring the Settlement Offer.

#### A. The Settlement Offer Existed when the Bankruptcy Petition was Filed.

As a preliminary matter, Attorneys have presented enough evidence to establish that the Settlement Offer existed at the time the bankruptcy action was initiated. Both Attorneys and counsel for Association Casualty Insurance Company (ACIC) submitted affidavits attesting to the Settlement Offer's existence on October 2, 2009, and Attorneys submitted emails that further confirm the Offer's existence at that time. (A.P. Dkt. No. 371 Exs. A, B, & C; A.P. Dkt. No. 402.) While the Trustee's affidavit indicated that she had no knowledge of any pre-

31

bankruptcy settlement offers (A.P. Dkt. No. 383-3 ¶ 5), her lack of information is insufficient to prevent a determination that the Settlement Offer was extant when the bankruptcy action began. Although Attorneys have not conclusively proved the value of the Settlement Offer, there is no genuine issue of material fact that the Settlement Offer existed at the time of filing.

### B. The Fee Agreement was an Executory Contract Rejected by the Trustee.

Having made that determination, the starting point in determining how to calculate Attorneys' fees from their work in procuring the Settlement Offer is to determine whether the Fee Agreement was an executory contract rejected in the bankruptcy case. "Executory contracts have been characterized as those with 'reciprocal remaining obligations.'" Gibson v. Resolution Trust Corp., 51 F.3d 1016, 1023 (11th Cir. 1995)(citing Gibson v. RTC, 750 F.Supp. 1565, 1569 (S.D. Fla. 1990), Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973)("defining an executory contract within the meaning of Bankruptcy Act as one involving mutual obligations 'so far unperformed that the failure of either [party] to complete performance would constitute a material breach excusing the performance of the other.'")). "[A]n attorney's contingent fee contract is [an] executory [contract] if further legal services

must be performed by the attorney before the matter may be brought to a conclusion." In re Hall, 415 B.R. at 922 (citing Tonry v. Hebert, (In re Tonry), 724 F.2d 467, 468 (5th Cir. 1984)).

In this case, when the bankruptcy was filed, the $150 million judgment from the ATS Litigation was on appeal, and Attorneys were in the process of negotiating another settlement. (A.P. Dkt. No. 371 Exs. A, B, & C; A.P. Dkt. No. 402.) Furthermore, Debtor had not yet recovered any money. Attorneys' representation of the Debtor in the ATS Litigation had not yet ended, and Attorneys were required to perform additional work to bring the matter to a conclusion. Since the ATS Litigation was the subject of the Fee Agreement, the Fee Agreement was therefore an executory contract.

Under the Bankruptcy Code, when a petition is filed, the trustee or debtor-in-possession has the choice to either assume or reject an executory contract.[15] 11 U.S.C. § 365(a). In a Chapter 11 case, "the trustee (or debtor-in-possession) may assume or reject . . . at any time before the confirmation of a plan." 11 U.S.C. § 365(d)(2). However, "in a Chapter 7 case,

---

[15] "Although § 365(a) grants the power to assume or reject an executory contract to the trustee, a debtor in possession is granted that same power pursuant to § 1107(a)." In re Westfields Apartments, LLC, No. 08-12573, 2010 WL 2179622, at *3 n.5 (Bankr. S.D. Ga. Apr. 27, 2010).

executory contracts are deemed rejected after 60 days if [the] trustee does not assume or reject." <u>In re Hall</u>, 415 B.R. at 922 (citing <u>11 U.S.C. § 365(d)(1)</u>).

In this case, the bankruptcy action was originally filed as an involuntary Chapter 7 case, and was voluntarily converted to a Chapter 11 case before an order for relief was entered in the chapter 7; therefore, the 60 day time period to accept or reject under a chapter 7 never began to run initially. (Case Dkt. Nos. 1 & 12.) Then, during the pendency of the case as a chapter 11, no plan was confirmed before the case was re-converted to a Chapter 7. The Debtor-in-possession was never forced to (nor did it actually) assume or reject the Fee Agreement in the Chapter 11. Therefore, once the case was re-converted to the Chapter 7 on April 12, 2010, the newly appointed Trustee had 60 days to assume or reject the Fee Agreement. Since the Trustee failed to take such action within that time, the Fee Agreement is deemed rejected.

### C. The Treatment of the Rejected Fee Agreement.

Under 11 U.S.C. § 365(g)(1), when the trustee's failure to assume an executory contract causes that contract to be deemed rejected, the rejection constitutes a contractual breach, and gives rise to a remedy for breach of contract in the non-debtor party. <u>See also</u> <u>Medical Malpractice Ins. Ass'n. v. Hirsch (In re</u>

34

Lavigne), 114 F.3d 379, 387 (2d Cir. 1997.); <u>In re Hall</u>, 415 B.R. at 922. "[T]he date of breach is set as the date immediately prior to the debtor's filing for bankruptcy," and the non-debtor's claim for damages is treated as a pre-petition claim. <u>In re Lavigne</u>, 114 F.3d at 387 (citing 11 U.S.C. § 365(g); 11 U.S.C. § 502(g)); <u>see also</u> <u>GATX Leasing Corp. v. Airlift Int'l., Inc. (In re Airlift Int'l., Inc.)</u>, 761 F.2d 1503, 1509 (11th Cir. 1985).

However, "rejection [under § 365(g)] has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated." <u>Thompkins v. Lil' Joe Records, Inc.</u>, 476 F.3d. 1294, 1306 (11th Cir. 2007)(citing <u>Cohen v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Group, Inc.)</u>, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992))(internal quotation marks omitted); <u>see also</u> <u>In re Sun Belt Elec. Constructors, Inc.</u>, 56 B.R. 686, 689 (Bankr. N.D. Ga. 1986)(citing <u>Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.</u>, 756 F.2d 1043, 1048 (4th Cir. 1985))("'Even though 11 U.S.C. § 365(g) treats rejection as a breach, the legislative history of § 365(g) makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party.'")

AO 72A

Furthermore, while "[t]he Bankruptcy Code treats rejection as a breach so that the non-debtor party will have a viable claim against the debtor . . . . the Code does not determine parties' rights regarding the contract and subsequent breach." In re Lavigne, 114 F.3d at 387 (citing In re Yasin, 179 B.R. 43, 50 (Bkrtcy.S.D.N.Y.1995)). Instead, state law determines the non-debtor's rights and the amount of damages. Id.; see also In re Hall, 415 B.R. at 922.

Under Georgia law, when an attorney's contingency fee agreement is breached before the contingency occurs, unless the parties specify what happens in that event, the attorney is limited to recovering in quantum meruit for the reasonable value of the services he rendered. See In re Hall, 415 B.R. at 923; Gilbert v. Edmundson, 193 Ga.App. 593, 594 (1989); Joseph H. King, Jr., P.C. v. Lessinger, 276 Ga.App. 145, 146 (2005). However, "[i]f the parties agree in their contract what the damages for a breach shall be, [the damages] are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." O.C.G.A. § 13-6-7.

In this case, the Fee Agreement contained three clauses addressing the end of employment: the breach clause, the termination clause, and the dismissal clause. While the parties argue over which clause applies, since the end of employment

36

occurred as a result of 11 U.S.C. § 365(g), and since that statute uses the term "breach," I find that the breach provision of the Fee Agreement, which grants Attorneys the reasonable value of the services they performed up until the date of breach, applies.

Therefore, since § 365(g) treats the breach as occurring pre-petition, Attorneys have a general unsecured claim for the reasonable value of their services rendered from the time they recovered the First Settlement, October 1, 2009, to the time of the bankruptcy was filed, December 2, 2009; such time includes the work they did on October 2, 2009, the date of the Settlement Offer.

### D. The amount of the Settlement Offer is immaterial to the amended motion for summary judgment.

Since the breach provision of the Fee Agreement supplies the proper method of determining Attorneys' fees for their work in producing the Settlement Offer, the amount of the Settlement Offer is only relevant to the extent that it is a factor for me to consider in awarding Attorneys the reasonable value of the services they performed. However, as that determination relates to Attorneys' unsecured claim for their pre-petition work, it is immaterial to this Amended Motion, which asks me to establish the amount of a Charging Lien by referencing the amount of the

37

Settlement Offer. Thus, the dispute about whether the Settlement Offer would have produced $3 million or $6 million for the Debtor does not preclude summary judgment.

## VI. Additional Issues

### A. Proof of Claim

In their Amended Response, Insurance Companies contend that because Attorneys' proofs of claim and responsive pleadings failed to assert a Charging Lien against the Settlement Offer in an amount determined by the dismissal clause in the Fee Agreement, Attorneys should not be permitted to assert such a claim for the first time on summary judgment. (A.P. Dkt. No. 397.) While Insurance Companies advance several arguments as to why Attorneys should have amended their filings, I find that Attorneys' request for a Charging Lien based on a percentage of the Settlement Offer was a reaction to the Trustee's original response to the Original Motion. The docket indicates that the Trustee's original response contained the first instance where she argued that the Fee Agreement was an executory contract rejected in bankruptcy. The Attorneys replied offering an alternative theory of recovery based upon the Trustee's newly articulated position. Claiming that the dismissal clause in the Fee Agreement supplied the measure of the Charging Lien was such

38

reply. I do not find that insufficient proofs of claim in any way could defeat the motion for summary judgment.

### B. No Charging Lien in the Cobb County Case

Finally, Attorneys contend that they are additionally entitled to a Charging Lien against the Second Settlement for their work in defending a declaratory judgment action filed in Cobb County Superior Court in 2007. (A.P. Dkt. No. 371.) They argue that since in the declaratory judgment action, ACIC asked the court to determine that there was no coverage and that ACIC had no duty to defend the ATS Litigation, had Attorneys not defended against the action, ACIC would have never defended the ATS Litigation; consequently, ACIC would have never entered into the Second Settlement. (Id.) Therefore, since the declaratory judgment action was filed prior to the bankruptcy action, Attorneys argue that they have a perfected Charging Lien against the Second Settlement for their fees in the declaratory judgment action.

I disagree for the same reasons that I denied Attorneys a Charging Lien against the Second Settlement for their work in the ATS Litigation. Attorneys' work as special counsel to the estate, as opposed to their work representing the Debtor prior to bankruptcy, produced the Second Settlement. Attorneys are not

entitled to a Charging Lien against the proceeds of the Second Settlement for their work in defending the Cobb County case.

## CONCLUSION

Therefore, having found that Attorneys lack a Charging Lien against the ATS Litigation portion of the Second Settlement proceeds, one genuine issue of material fact remains: what is the estate's interest in the Second Settlement? Since the answer to this question affects both the amount and priority in which Attorneys are paid for their work in producing part of the Second Settlement, Attorneys have not established grounds for summary judgment.

## ORDER

Attorneys' motion for summary judgment is therefore **ORDERED DENIED.**

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 20 day of November, 2012.

AO 72A